CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

NOV 30 2007

JOHN F. CORCORAN, CLERK
BY: /s/ J. Bush
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JOHN WAYNE BROWN,  )
    Plaintiff, ) Civil Action No. 7:07cv00396
 )
v. ) **MEMORANDUM OPINION**
 )
GENE M. JOHNSON, et al., ) By: Samuel G. Wilson
    Defendants. ) United States District Judge

Plaintiff John Wayne Brown, a Virginia inmate proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Brown alleges that he was denied adequate medical care, that his grievances and legal and regular mail were delayed and censored, that he was subjected to cruel and unusual living conditions, that he was denied court access due to an inadequate legal library, and that he was denied due process at several institutional disciplinary hearings. As relief, Brown seeks $588,000 in damages, injunctive relief, and "sanctions" against the defendants. The court finds that Brown's allegations fail to state a claim upon which the court may grant relief and, therefore, dismisses his action without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).

I.

On December 5, 2006, Brown was transferred to Coffeewood Correctional Center ("Coffeewood"). Brown alleges that prior to his arrival at Coffeewood, he was provided with a bottom-bunk "due to health issues relating to a prior accident." During intake at Coffeewood, Brown requested a bottom-bunk. Defendant Nurse R. Baker informed him that he would need to see the doctor before he could be assigned a bottom-bunk, but that they would deal with that issue later. Brown insisted that he be assigned a bottom-bunk and ultimately, Nurse Baker denied his request. Brown alleges that Nurse Baker denied him adequate medical treatment in denying his request for

a bottom-bunk and that because Nurse Lucas was present during his intake, she also denied him adequate medical treatment.

Upset that his request for a bottom-bunk had been denied, Brown decided that he would not cooperate with the rest of the intake procedure and "elected" to remain silent when questioned about other health issues. As a result of his noncooperation, Brown claims that he was "placed in segregation and charged with a 119B (refusal to submit to a diagnostic test)." Brown claims that he remained in segregation until January 4, 2007. Upon being placed in segregation, defendant Psychologist Kaval performed a mental health evaluation of Brown. Brown complains that he was placed on suicide watch "based on this evaluation alone."

Brown also alleges that prior to his arrival at Coffeewood, he was on Prozac, heartburn medication, and pain medication. After arriving at Coffeewood, Brown complains that his medication was delayed "for several days." He does not allege any effect from this delay in his receipt of his medication. Further, he concedes that once the medication was provided to him, he refused to take it because of "harassment" by the medical staff. Brown claims that because the nurses threatened to "fix" his medication, threatened him "with write ups," and once woke him up at 2:00 AM to take his temperature, he "feared that he would be harmed if took any medication during his time at Coffeewood."

Brown also alleges that, during his incarceration at Coffeewood, his grievances, legal mail, and personal mail were delayed and censored. He claims that on December 21, 2006, he sent a grievance appeal letter to the Virginia Department of Corrections ("VDOC") Regional Office for review, but that the letter was not received by that office until January 4, 2007, nine business days later. He argues that defendant Warden Dillman ordered the mailroom staff to delay his grievance

2

mail during this time, "for the purpose of censoring said letter." He claims that defendant Ombudsman Tucker and defendant Regional Director A. Bryant refused to process his grievances on this matter. Brown also claims that he mailed another grievance letter to the VDOC Regional Office on January 8, 2007, which was not reviewed until January 18, 2007, eight business days later. He argues that these purported delays constituted "censorship" of his mail and had a "chilling effect on [his] attempt to get relief via grievance[s]." He also alleges that a letter from the VDOC Regional Office, post-marked January 26, 2007, was not received by him until February 5, 2007, six business days later and, therefore, was censored. On January 8, 2007, Brown claims that his legal mail was opened outside of his presence, and when he complained about this "improper handling of his legal mail," he was then "denied [that] legal mail." He states that, to date, he does not know who the mail was from or what it contained. Next, Brown alleges that defendant Ombudsman Tucker "withheld," at the direction of defendant Warden Dillman, an informal complaint regarding Brown's medical treatment for five days before sending it to the medical department for review. Finally, Brown argues that several pieces of personal mail to and from his friend, mother, and sister were "censored," including a letter postmarked on December 13, 2006, and received by Brown on December 27, 2006, nine business days later; two letters, both allegedly postmarked February 4, 2007 (a Sunday), and received by his mother and sister on February 12, 2007, six business days later; and letters sent to his mother and sister on February 14 and 18, 2007. Brown argues that this censorship of his mail and grievances has caused him "mental anguish, conflict with family and friends, [and has] violated [his family's and friends'] constitutional rights."

Brown also claims that he was subjected to cruel and unusual living conditions while housed in the segregation unit at Coffeewood, due to "unsanitary conditions" created when cleaning supplies

3

such as mops, toilet brushes, brooms, and dustpans, were provided to him through the same tray slot that his meals were provided through. Brown also alleges that these supplies were not cleaned before being passed from one cell to the next. Brown concedes that his concerns were addressed by the Coffeewood staff through the grievance process, but alleges that the practice nevertheless continued. Brown argues that this practice mixes "feces with an inmate's food." He does not allege that he ate any of the allegedly contaminated food or that he suffered any injury as a result of ingesting or being exposed to the food or cleaning supplies.

Brown further claims that he was denied access to the courts due to the inadequate law library at Coffeewood. Brown specifically alleges that he was allowed only one forty-five minute law library visit, that materials were available for review only by exact cite, and no research assistance was available. Brown admits that an institutional attorney was available, and even that he corresponded with multiple institutional attorneys, but claims that their responses either contained no or incorrect assistance and legal advice. He claims that because he was not provided legal assistance or an adequate law library, his criminal appeal and other pending criminal matters were "adversely effected." Brown does not provide any further details regarding the alleged adverse effect.

Brown contends that on January 4, 2007, the night that he was transferred from segregation to general population, he had to sleep in a chair because he was "unable to get on the top bunk [, to which he was assigned]." He claims that he filed "several" emergency grievances, to no avail. However, he concedes that he was given a temporary bottom-bunk assignment the next day, pending an appointment with the doctor. A few days later, Brown was seen by Dr. Joseph, who ordered x-rays. On January 18, 2007, Brown was placed back in segregation. The x-rays were taken on

4

January 18, 24, and 31, 2007, and February 1, 2007. Dr. Joseph saw Brown again on at least three other occasions between January 6, 2007 and January 22, 2007. After their appointment on January 22, 2007, Brown told Dr. Joseph that he did not want to be seen by medical again unless it concerned the medical request for a bottom-bunk. He claims that he "never received any treatment regarding [his request for a] medical bottom-bunk and this issue was never resolved."

Finally, Brown alleges that he was denied due process at several disciplinary hearings while he was at Coffeewood and that some of the charges filed against him were done in retaliation. On December 5, 2006, Brown was charged with failing to submit to diagnostic tests, when he had a "disagreement" with defendant Nurse Baker during his intake. He alleges that the charge was filed as retaliation against him seeking medical qualification for a bottom-bunk. At his hearing on this matter, he was denied the opportunity to present witnesses, question the "reporting person," and submit documentary evidence. Hearing Officer Fishback found Brown guilty of the charge for which he was "given thirty (30) days isolation," assessed "an additional penalty of ninety (90) days loss of good time," and classified to a lower Good Conduct Allowance ("GCA") level, which he claims resulted in him being "punished twice for one matter." He also alleges that Fishback did not "give him the reasons for his finding of guilt and erroneously claimed that Brown admitted guilt." On December 22, 2006, Brown was charged with "delaying and hindering." He claims that the incident upon which the charge is based never occurred and that defendant Officer Denby filed the charge to retaliate against Brown for filing a prior grievance. He also alleges that he was again denied witnesses, documentary evidence, and the opportunity to question the reporting officer. Hearing Officer Fishback found Brown guilty again and he was penalized by the loss of thirty days of canteen privileges. He states that this finding of guilt again affected his GCA level. On January

5

10, 2007, Brown was charged with disobeying an order. He contends that at his January 18, 2007 hearing, he was again denied witnesses, documentary evidence, and the opportunity to question the reporting officer. Hearing Officer Fishback found Brown guilty, but allegedly did not cite the reasons for his finding. Brown received fifteen days in isolation and an enhancement to his GCA level. Based on this enhancement, Brown claims that he was ultimately transferred to a higher security facility. On January 31, 2007, Brown was charged with three counts of using vulgar language and two counts of disobeying an order. Brown admits that he "took [the] penalty offer" but only to "avoid further biased/prejudical hearing[s]." On February 9, 2007, Brown was charged with threatening the reporting officer. Brown claims that this never happened and that at his hearing on this charge, he was again denied witnesses, documentary evidence, and the opportunity to question the reporting officer. Hearing Officer Fishback found Brown guilty and he was penalized with thirty days of isolation. Brown appealed all of his disciplinary charges, except those three for which he took the penalty offer, and all of his appeals were denied.

Brown was transferred to Augusta Correctional Center on March 5, 2007 and then to Wallens Ridge State Prison, where he is currently housed, on approximately September 26, 2007.

## II.

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to establish that the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). "'A serious medical need' is 'one that

6

has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Shelton v. Angelone, 183 F. Supp. 2d 830, 840 (W.D. Va. 2002) (quoting Cox v. District of Columbia, 834 F. Supp. 439, 441 (D. D.C. 1992)). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06. Moreover, claims of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975).

Brown claims that he was denied adequate medical attention when Nurse Baker and Nurse Lucas denied his request for a bottom bunk upon his arrival at Coffeewood. However, he concedes that he was then placed in segregation, where, even if there was a bunk bed, he had no cellmate and, therefore, could sleep on a bottom bunk. The only time that Brown alleges that he would have had to sleep on a top bunk was the first night of his transfer from segregation to general population, after his request for a bottom bunk was again denied. However, Brown did not even sleep on the top bunk that night, he slept in a chair and does not allege any injury as a result of sleeping in the chair for that one night. Further, he concedes that he was given a temporary assignment to the bottom bunk the next day. Additionally, Brown was examined by the institutional physician and x-rays were taken on several instances after he requested a bottom bunk. Brown has not alleged sufficient facts indicating that he had a serious medical need for the bottom bunk. Rather, he simply says that he was given a bottom bunk at his previous institution based on his "health issues relating to a prior accident." He does not allege that he had been diagnosed by a physician as requiring special treatment or that his condition was so obvious that a layperson would easily recognize his need for

7

a bottom bunk.[1] Nor does he allege any injury of constitutional magnitude. Accordingly, the court finds that he has not alleged facts sufficient to show that he had a serious medical need or that the defendants acted with deliberate indifference, and thus, his claim fails.

Brown also complains that the institutional psychologist erroneously placed him on suicide watch after performing a mental health evaluation. However, this claim amounts to, at most, nothing more than a doctor-patient disagreement regarding diagnosis and proper course of treatment, which is not actionable under § 1983.

Finally, Brown claims that his medication was delayed for "several days" subsequent to his arrival at Coffeewood. A delay in receiving medical care may constitute a violation of the Eighth Amendment only when the delay, itself, causes substantial harm. See Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Wynn v. Mundo, 367 F. Supp. 2d 832, 838 (M.D. N.C. 2004). In this case, Brown does not allege any injury from this brief delay in receiving his medication. Moreover, when Brown was provided his medication after the short delay, he refused to take it.[2] Accordingly, the court finds that Brown's allegations fail to state a claim under the Eighth Amendment.

---

[1] To the extent that Brown alleges that the Coffeewood medical staff was negligent in diagnosing his condition or by failing to take proper x-rays, those claims fail as well. Mere allegations of malpractice or negligence in treatment do not state cognizable constitutional claims. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

[2] Brown claims that he refused his medication because of harassment by the Coffeewood medical staff. However, verbal harassment by prison officials in and of itself does not state a constitutional deprivation under § 1983. Johnson v. Laham, 9 F.3d 1543 (4th Cir. 1993) (unpublished). An institutional employee's verbal harassment or idle threats to an inmate, even if they cause an inmate fear, anxiety, or discomfort, does not constitute an invasion of any identified liberty interest. See Morrison v. Martin, 755 F. Supp. 683, 687 (E.D. N.C. 1990), aff'd 917 F.2d 1302 (4th Cir. 1990) (finding that the threatening language of a prison official, even if true, does not amount to constitutional violation); Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."). Thus, plaintiff's allegation of harassment, without more, fails to state a claim and must be dismissed.

III.

Brown alleges that, during his incarceration at Coffeewood, his grievances, legal mail, and person mail were delayed and censored. Brown does not allege that the alleged mail delays hindered his ability to communicate with the courts, interfered with his ability to prosecute a civil action, or caused any other actual harm. Further, while an unreasonable delay in delivery or mailing may state a cognizable claim, Bolding v. Holshouser, 575 F.2d 461, 464-65 (4th Cir. 1978), Brown alleges delays of merely a few days, which are not inherently unreasonable. Moreover, outgoing mail may be opened and inspected by prison officials; thus, the opening, inspection, and any resultant delay does not state a claim of constitutional significance. See Altizer v. Deeds, 191 F.3d 540, 548-49 & n. 14 (4th Cir. 1999). Occasional delays of incoming mail also does not state a constitutional claim. See Pearson v. Simms, 345 F. Supp. 2d 515, 519 (D. Md. 2003) (aff'd, 88 Fed. Appx. 639 (4th Cir. 2004)) (holding that "occasional incidents of delay or non-delivery of mail" are not actionable under § 1983). Brown also alleges that on one occasion, a prison official opened his mail. However, he does not allege a "pattern or practice" of prison staff opening or interfering with inmates' legal mail. See Bryant v. Winston, 750 F. Supp. 733, 734 (E.D. Va. 1990) (holding that the negligent opening of a prisoner's legal mail, on limited occasions and not as part of any pattern or practice, is not actionable under § 1983). Accordingly, at most, Brown has alleged negligent opening of his mail on one occasion, which does not rise to the level of a constitutional claim. Therefore, the court finds that Brown has failed to state a constitutional claim under the First Amendment.[3]

---

[3] The court further notes that Brown does not have standing to bring a claim on behalf of his friends and family in this lawsuit. See Lewis v. Casey, 518 U.S. 343, 349 (1996); see also Altman v. Marathon County Jail Adm'r. Dickman, No. 03cv00371, 2003 WL 23221145 at *4 (W.D. Wis. 2003) (noting that a non-prisoner who believes her First

9

## IV.

Brown also claims that he was subjected to cruel and unusual living conditions while housed in the segregation unit at Coffeewood, due to "unsanitary conditions" created when cleaning supplies such as mops, toilet brushes, brooms, and dustpans, were provided to him through the same tray slot that his meals were provided through. Although the Eighth Amendment protects prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Therefore, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege that the living conditions violated contemporary standards of decency and that prison officials were deliberately indifferent to those conditions. Wilson v. Seiter, 501 U.S. 294 (1991). In addition, a plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993).

While the use of the tray slot may could potentially be unsanitary, Brown has not alleged anything to suggest that the segregation conditions violated contemporary standards of decency. Brown does not allege that his food ever came into contact with the portions of the tray slot that the cleaning supplies touched. Nor has he alleged that, because of the conditions, he has sustained a serious or significant injury or is at risk of a future injury. See White v. Gregory, 1 F.3d 267 (4th

---

Amendment right to correspond with a prisoner has been violated must bring her own action to vindicate her rights).

Cir. 1993) (holding that a prisoner must suffer serious injury to be subjected to cruel and unusual punishment within the meaning of the Eighth Amendment); Blunt v. Hester, 816 F.2d 671 (4th Cir. 1987) (citing Shrader v. White, 761 F.2d 975, 986 (4th Cir.1985) (affirming district court where inmate failed to allege any harm from allegedly unsanitary kitchen conditions)); Dameron v. Matthews, No. 7:06cv00229, slip op. at *1 (W.D. Va. Apr. 21, 2006) (finding that inmate who received his food and drinks through the same tray slot that another inmate passed bags of feces through failed to state a claim under the Eight Amendment because inmate did not suffer any actual injury). Therefore, the court finds that Brown has failed to state a constitutional claim under the Eighth Amendment.

## V.

Brown further claims that he was denied access to the courts due to the inadequate law library at Coffeewood. Reasonable access by prisoners to both state and federal courts is a guaranteed right, Ex parte Hull, 312 U.S. 546 (1941), and states must affirmatively provide inmates with either law libraries or persons trained in law to prosecute habeas and civil rights claims. See Bounds v. Smith, 430 U.S. 817, 828 (1977). In order to prevail on an access to courts claim it is not enough for a prisoner merely to state that the legal services available to him are inadequate. According to the Supreme Court, "the inmate . . . must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996). In this case, Brown concedes that Coffeewood provides not only a law library, but also provides access to a person trained in the law to assist inmates. Moreover, he has failed to allege any facts which suggest that the alleged deficiencies have caused him any actual injury or specific harm. In fact, Brown's filing of the instant action suggests that his

11

ability to correspond with the courts has not been hindered. Finally, the court notes that inmates in segregation[4] may have their access to the law library limited to their legal deadlines. See Harrington v. Holshouser, 741 F.2d 66, 68-89 (4th Cir. 1984) (finding that prison officials may restrict the use of library inmates on segregation to instances in which they have legal deadlines). Therefore, the court finds that Brown's allegations fail to state a claim under the First Amendment.

## VI.

### A.

Brown alleges that he was denied due process when he was placed in segregation as a result of his failure to cooperate with the intake procedure. In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Further, although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Further, prisoners generally do not have a constitutionally recognized liberty interest in a particular security

---

[4] Brown indicates in his complaint that he was in a segregation unit during the majority of his incarceration at Coffeewood.

12

classification nor a constitutional right to be confined in a particular prison. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976). However, in Wilkinson v. Austin, 545 U.S. 209 (2005), the Court found that inmates did have a liberty interest in avoiding assignment to a state's supermax prison. In reaching this conclusion, the Court carefully distinguished the supermax facilities from normal segregation units on three grounds. First, inmates in the supermax facility were "deprived of almost any environmental or sensory stimuli and of almost all human contact." Wilkinson, 545 U.S. at 214. Second, they were assigned for "an indefinite period of time, limited only by [the] inmate's sentence." Id. Third, once assigned to supermax "[i]nmates otherwise eligible for parole lose their eligibility while incarcerated" at the facility. Id. at 215. After noting other onerous conditions of confinement, including that the cells were lighted 24 hours per day, the court stated: "While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." Id. at 224. In this case, while the conditions of Brown's confinement in segregation were more restrictive than those applied to inmates in the general population, they were not nearly so restrictive and atypical as those at issue in Wilkinson. Therefore, the court finds that Brown did not have a liberty interest in being assigned to the general population and, thus, his due process claim fails.

### B.

Finally, Brown alleges that he was denied due process at several disciplinary hearings while he was at Coffeewood and that some of the charges filed against him were done in retaliation. The Due Process Clause of the Fourteenth Amendment mandates several procedural safeguards before an inmate may be punished for violating prison disciplinary rules with the loss of protected liberty

13

interests, such as earned good conduct time, or with deprivation of property. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 557-58 (1974). However, an inmate is only entitled to these procedural protections when the conviction results in the loss of statutory good time credits or where some other liberty interest is at issue. <u>Id.</u> Further, although inmates do have some due process rights during institutional hearings, those rights are limited to advanced, written notice of the charges, written findings, and a limited right to call witnesses. See <u>id.</u> at 563-64. In addition, there must be "some evidence" to support the disciplinary board's conclusions. <u>Superintendent v. Hill</u>, 472 U.S. 445, 447 (1985). Brown does not allege that any of his convictions, except that for his failure to submit to diagnostic testing at his intake procedure, resulted in the loss of good conduct time, and thus, Brown is not entitled to procedural protections in those instances. Further, the court finds that none of Brown's allegations with regard to those convictions call into question any other liberty interest. Accordingly, the court dismisses those claims. With regard to his conviction for failing to submit to diagnostic testing, although Brown did lose good time credits, he has not shown that the conviction has been overturned, and thus, cannot recover monetary damages under § 1983. Accordingly, the court also dismisses this claim.

### 1.

With regard to his December 22, 2006 hearing on his delay and hindering charge, Brown has not alleged facts sufficient to establish a federal due process claim. The discipline imposed on Brown for the charge did not subject him to the loss of good-time credits or solitary confinement, <u>Wolff</u>, 418 U.S. at 557-58, and he had no protected liberty interest in avoiding the loss of canteen privileges. In order for Brown to prevail on his due process claim, he must show that his punishment was not "within the normal limits or range of custody which the conviction has authorized the State

14

Case 7:07-cv-00396-SGW-mfu    Document 9    Filed 11/30/07    Page 14 of 18    Pageid#: 48

to impose," and thus created a liberty interest in avoiding that penalty. See Sandin, 515 U.S. at 478 (quoting Meachum v. Fano, 427 U.S. 215, 225 (1976)). Applying Sandin, it is clear that the loss of canteen privileges is "within the normal limits or range of custody which the conviction has authorized the State to impose," id., 515 U.S. at 478, and Brown experienced no atypical hardship. Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Therefore, the court finds that there is no federal right to enhanced procedural protections at issue here; thus, Brown has failed to state a claim under the Fourteenth Amendment.[5]

### 2.

Brown also fails to allege facts indicating that he has been deprived of any federally protected liberty interest without due process regarding his January 10, 2007 and January 31, 2007 hearings on his charges for disobeying an order, and his February 9, 2007 hearing on his charge for threatening an officer. Brown received fifteen days in isolation as a result of the January 10, 2007 charge,[6] and thirty days in isolation as a result of the February 9, 2007 charge. Brown does not challenge the conditions of his confinement while in isolation. Brown also does not indicate any

---

[5] Brown further contends these charges were written in retaliation for prior grievances. The Fourth Circuit has made clear that inmate claims of "retaliation" must be based on more than conclusory allegations. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). As Brown provides absolutely no factual support for his retaliation claims, they will be dismissed.

[6] Brown also alleges that his "GCA Level" was reclassified causing him to be "considered" for a transfer to a "higher level" facility; however, Brown does not have a protected liberty interest in GCA levels. See Oliver v. Powell, 250 F. Supp. 2d 593, 605 (E.D. Va. 2002); Hamm-Bey v. Johnson, No. 7:05cv00559, 2005 WL 2563029 at *2 (W.D. Va. Oct. 11, 2005) (finding that a move to a new security level and coinciding limits to inmate's potential to earn good conduct credit does not trigger federal due process protections). Therefore, his due process claim fails as to this issue.

15

punishment received for the January 31, 2007 charges. Punitive isolation for brief and intermittent periods is not an atypical or significant hardship, and thus, no liberty interest arises. See Sandin, 515 U.S. at 484 (finding 30 days in disciplinary segregation did not cause a "major disruption" in inmate's environment because it did not exceed similar confinement in either duration or degree of restriction); Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (holding that a six-month term in segregation did not impose an atypical hardship where the inmates alleged that their cells were infested with vermin and smeared with urine; that no outside recreation was permitted; that there were no religious services available; and that food was served in considerably smaller portions); Jackson v. Smith, 91 F.3d 130 (Table), 1996 WL 380254 (4th Cir. 1996) (unpublished) (affirming district court's judgment as a matter of law that confinement in isolation did not implicate a due-process protected liberty interest); Sadler v. Young, No. 7:04cv00580, slip op. at *9 (W.D. Va. Apr. 28, 2006) (finding that the imposition of disciplinary isolation does not amount to an atypical prison condition); Wells v. Mattern, No. 7:06cv00223, slip op. at *2 (W.D. Va. June 12, 2006) (citing Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 643 (8th Cir. 1996) (holding that placement in punitive isolation was not an atypical and significant deprivation even though prisoner faced restrictions in mail, telephone, visitation, commissary, and personal-possession privileges)); Hutto v. Finney, 437 U.S. 678, 686, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978) (finding that confinement to punitive isolation does not implicate cruel and unusual punishment unless conditions themselves are cruel and unusual); Sheley v. Dugger, 833 F.2d 1420, 1428-29 (11th Cir. 1987) (same); Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981) (same). The court finds that Brown's placement in isolation for a period of 15 days and then later for a period of 30 days is not an atypical or significant hardship, and therefore, Brown has failed to raise an issue of constitutional magnitude as to those

16

charges or subsequent convictions.

### 3.

Finally, Brown alleges that he was denied due process at the disciplinary hearing concerning his failure to submit to diagnostic testing during his intake procedure, which resulted in his placement in segregation and the loss of ninety days of good time credits. To the extent that Brown alleges that his initial placement in segregation was unconstitutional, the court has previously noted that an inmate does not have a liberty interest in avoiding isolation or separation from the general prison population. See Beverati, 120 F.3d at 502; Gaston, 946 F.2d at 343. Furthermore, Brown's claim for damages as to this issue is not cognizable under § 1983. If a prisoner's challenge to disciplinary hearing procedures would necessarily imply the invalidity of his conviction if successful, any cause of action under § 1983 for monetary damages against individuals involved in that conviction does not accrue until the prisoner shows that the conviction has been otherwise overturned. See Edwards v. Balisok, 520 U.S. 641, 646-47 (1997) (citing Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)). Brown's § 1983 action falls squarely within the ambit of Heck and Edwards. Under the principles established by Wolff, 418 U.S. 539, if Brown could prove his allegations that he was not allowed to present witnesses, not allowed to confront witnesses against him, not allowed to review or present documentary evidence, and that the presiding board failed to give reasons for finding Brown guilty, such proof would necessarily invalidate the disciplinary conviction. See Pierce v. Freeman, 121 F.3d 699 (Table), 1997 WL 467533 (4th Cir. Aug. 15, 1997) (unpublished); Goodman v. Gilmore, No. 7:06cv00342, 2006 WL 1587463 at *1-2 (W.D. Va. June 8, 2006). Accordingly, as Brown offers no indication that the disciplinary conviction has been invalidated or expunged, his claims for damages against the defendants under § 1983 have not yet

accrued, and thus, his claim must be dismissed. To the extent Brown seeks restoration of good time credits in federal court, he may only do so by way of writ of habeas corpus, after he has exhausted his state court remedies. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Therefore, the court finds that Brown's claims seeking restoration of his good time credits are not properly challenged in a § 1983 action and, therefore, are dismissed without prejudice.

## VII.

For the reasons stated, the court finds that Brown has not presented any claims on which relief can be granted, and therefore, dismisses Brown's complaint, pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to plaintiff.

**ENTER**: This 30th day of November, 2007.

United States District Judge